IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ROGER FREELAND, on his own behalf,
ROSELYN FREELAND, on her own behalf,
and as mother and next friend of REX
FREELAND, a minor with severe brain damage,**

        Plaintiffs,

v.                                                      No. CIV 99-1500 MV/WWD

**THE UNITED STATES OF AMERICA**,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiffs' Motion for Summary Judgment as to Defendant's Third Affirmative Defense **[Doc. No. 29]**. The Court, having considered the motion, briefs, relevant law, and being otherwise fully informed, finds that the motion is well taken and will be **GRANTED**, as explained below.

### BACKGROUND

This is a medical malpractice action brought pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671 *et seq.* Plaintiffs allege that Rex Freeland, a fifteen-year-old Navajo boy, was taken to the Crownpoint Clinic, on Navajo tribal land, for treatment of a toothache on May 9, 1999. Physician's assistant Jennie Walters examined Rex, then called dentist Dr. Charles Levesque. Rex was given intravenous antibiotics and fluids; his mother was instructed to bring him back the next day. On the morning of May 10, Dr. Levesque examined Rex, found swelling associated with tooth decay, and determined that Rex had signs of Ludwig's

1

angina (airway obstruction). Dr. Levesque directed Rex's mother to take him to the Gallup Indian Medical Center (GIMC) immediately. Dr. Levesque telephoned Dr. Jerome Holbrook, a dentist at the GIMC, to advise him of Rex's condition. Rex arrived at the GIMC at 10:00 a.m. Dr. Holbrook examined the swelling and arranged for oral surgery. Surgery began at 2:55 p.m. and ended at 3:30 p.m. Dr. Holbrook performed the surgery; certified registered nurse anesthetist Michael Steele provided anesthesia. Although Rex's vital signs were normal at the conclusion of the surgery, plaintiffs allege that by the time Rex arrived at the Intensive Care Unit (ICU) at 4:00 p.m. he was cyanotic, not breathing or barely breathing; his heart rate had fallen precipitously; and his blood oxygen level was dangerously low. Either before or shortly after Rex arrived at the ICU, Dr. Holbrook and nurse anesthetist Steele decided to remove Rex's endotracheal tube. Rex stopped breathing and went into cardiac arrest. Although his heart and lung function returned after the administration of cardiopulmonary resuscitation, he suffered profound cerebral global hypoxia and encephalopathy. Rex now lives in a state of persistent vegetation, breathes through a tube inserted in his trachea, and requires constant medical, nursing, and attendant care.

Plaintiffs filed this FTCA action on December 28, 1999. They claim that Rex received negligent care at the Crownpoint Clinic on May 9 and the GIMC on May 10. On September 21, 2000, plaintiffs filed their Motion for Summary Judgment as to Defendant's Third Affirmative Defense. They ask that the United States' defense asserting the applicability of the New Mexico Medical Malpractice Act (NMMMA) – and, in particular, the Act's $600,000 limitation on the amount of damages that may be recovered, N.M. Stat. Ann. § 41-5-6 – be dismissed with respect to Dr. Holbrook's allegedly negligent acts and omissions.

## STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "secure the just, speedy and inexpensive determination of every action." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B&B Chemical Co.*, 2 F.3d 995, 996 (10th Cir. 1993) (citations omitted). The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (citation omitted). Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Rule 56(d) authorizes the Court to grant summary judgment on a specific claim or defense in order to narrow the issues for trial.

## ANALYSIS

The FTCA provides a limited waiver of the federal government's sovereign immunity. Under the statute, the United States is subject to lawsuits for money damages for personal injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

The parties proceed on the assumption that New Mexico law, as applied to private parties in "like circumstances," determines the scope of the government's liability in this case. This assumption may be erroneous. In *Cheromiah v. United States*, 55 F. Supp.2d 1295 (D.N.M.

1999), this Court held that Acoma tribal law was the "law of the place" applicable to an FTCA medical malpractice claim filed by Acoma and Laguna Tribe members for events that took place at an Indian Health Services hospital on Acoma tribal land. *Id.* at 1305. Here, plaintiffs have alleged that the Crownpoint Clinic lies on Navajo tribal land. It is not clear whether the GIMC does also. Neither side has discussed Navajo tribal law or *Cheromiah* in their briefs. In their reply brief, however, plaintiffs made clear that they do not concede the NMMMA's general applicability to this case.

For the purpose of ruling on the limited issue presented in plaintiffs' summary judgment motion, the Court assumes without deciding that New Mexico law is the "law of the place" under § 1346(b)(1). The parties are free to raise the question of tribal law's applicability in subsequent proceedings.

The Government argues that its exposure to compensatory damages is limited to $600,000 under the NMMMA. It points to § 41-5-6(A) of the Act, which provides that "[e]xcept for punitive damages and medical care and related benefits, the aggregate dollar amount recoverable by all persons for or arising from any injury or death to a patient as a result of malpractice shall not exceed six hundred thousand dollars ($600,000) per occurrence." This limitation applies only to qualified health care providers. N.M. Stat. Ann. § 41-5-5(C); *see also Roberts v. Southwest Community Health Servs.*, 837 P.2d 442, 447-48 (1992) (stating that it would make a "mockery" of the NMMMA to apply it to practitioners who are not qualified health care providers). The term "health care provider" is defined as "a person, corporation, organization, facility or institution licensed or certified by this state to provide health care or professional services as a doctor of medicine, hospital, outpatient health care facility, doctor of osteopathy, chiropractor, podiatrist, nurse anesthetist or physician's assistant." N.M. Stat. Ann. § 41-5-3(A). To become qualified for the malpractice damages cap, a health care provider must file proof with the state

4

that it is insured by a policy of malpractice liability insurance in the amount of at least $200,000 and must pay a surcharge assessed on health care providers, for the New Mexico's patient's compensation fund.  *See* N.M. Stat. Ann. §§ 41-5-5, 41-5-25.

As the government points out, other circuits have applied state-law malpractice caps to claims brought under the FTCA.  *See Carter v. United States*, 982 F.2d 1141, 1143-44 (7th Cir. 1992); *Lozada v. United States*, 974 F.2d 986, 988-89 (8th Cir. 1992); *Owen v. United States*, 935 F.2d 734, 737 (5th Cir. 1991); *Starns v. United States*, 923 F.2d 34, 37 (4th Cir. 1991); *Taylor v. United States*, 821 F.2d 1428, 1431 (9th Cir. 1987).  In so doing, these circuits have applied 28 U.S.C. § 2674, which states that in FTCA cases the government shall be treated "in the same manner and to the same extent as a private individual under like circumstances" under the applicable law of the place.  Several courts have further held that the United States may benefit from a state's limitation on tort liability even if it did not otherwise participate in the statutory scheme that provides the cap.  *See Carter*, 982 F.2d at 1143; *Lozada*, 974 F.2d at 988; *Owen*, 935 F.2d at 737-38.  Although the Tenth Circuit has not directly addressed this issue, it has in dicta described these circuit holdings as "undoubtedly true."  *Hill v. United States*, 81 F.3d 118, 121 (10th Cir. 1996).  In addition, this Court has found the damages cap in the NMMMA generally applicable to FTCA claims for medical malpractice against the United States.  *See, e.g.*, *Vincoy v. United States*, No. 97-0296 (D.N.M. June 1, 1998); *Garcia v. United States*, No. 93-0538 (D.N.M. May 18, 1994).

Under the NMMMA's definition of "health care provider," the damages cap would apply to Crownpoint Clinic, the GIMC, physician's assistant Walters, and nurse anesthetist Steele, provided that they were otherwise qualified under the Act.  It would not, however, apply to Dr. Levesque or Dr. Holbrook.  Section 41-5-3(A) specifies several types of medical practitioners:

doctors of medicine, osteopaths, chiropractors, podiatrists, nurse anesthetists, and physician's assistants. It does not mention dentists. Under the maxim of statutory interpretation *expressio unius est exclusio alterius*, the Court treats the list of medical practitioners under § 41-5-3(A) as exhaustive.

With respect to § 2674 of the FTCA, the Tenth Circuit has observed: "The 'like circumstances' inquiry is designed to prevent state legislatures from using the United States' waiver of sovereign immunity under the FTCA as an occasion to 'enrich their own citizens at the expense of the deepest pocket.' This goal is accomplished by requiring the United States' liability to be measured by reference to the liability of private parties." *Nationwide Mut. Ins. Co. v. United States*, 3 F.3d 1392, 1396 (10th Cir. 1993) (citation omitted). Here, Dr. Holbrook, as a dentist, would not receive the benefit of the $600,000 cap under the NMMMA. It follows that the United States may not receive it either, at least insofar as plaintiffs are able to prove that Dr. Holbrook's negligent acts or omissions caused Rex Freeland's injuries.

This Court reached a similar result in *Vincoy v. United States*, No. 97-0296 (D.N.M. June 1, 1998). There, Chief Justice Conway ruled that the NMMMA cap was inapplicable to the extent that certain personnel at a federally funded medical center – nurses, administrators, and pharmacists – were negligent and caused the plaintiff's injuries.

The government argues *Vincoy* was wrongly decided. It contends that because its liability under the FTCA is limited to the theory of *respondeat superior*, it should be analogized to a private corporate employer, such as the GIMC, not an individual dentist like Dr. Holbrook. The Court finds this argument unpersuasive. The plain language of the FTCA states that the United States assumes the liability that "a private person" would have in the circumstances. 28 U.S.C. § 1346(b)(1). It does not limit the government's liability to that of a private person's employer.

6

The Eighth Circuit dealt with a similar issue in *Knowles v. United States*, 91 F.3d 1147 (8th Cir. 1996). In that case, a state-law damages cap did not apply to "practitioners of the healing arts," such as the military medical services specialists whom the plaintiffs alleged acted negligently. *Id.* at 1150. The United States argued that because the state statute covered hospitals, and because the negligence of the medical services specialists would be charged to the hospital where they worked, the United States was still entitled to the benefit of the damages cap. The Eighth Circuit disagreed:

> Under the FTCA, the United States will be held liable to the same extent as a private party. It is "standing in the shoes of . . . the [medical service specialists]. Therefore, the United States shares in the protection [of the statute] to the same extent the individuals would if they were sued directly." It follows, then, that if medical services specialists, individually, are not protected by the statute, neither is the United States shielded from the consequences of their negligence.
>
> . . . .
>
> . . . . When someone is injured by a tort committed by an employee of the United States who is acting within the scope of his employment, that employee cannot be sued. Rather, the injured person must sue the United States which is liable in its employee's stead.
>
> That is what we mean by saying that the United States stands in the shoes of the medical services specialists. It has, through the FTCA and the Westfall and Gonzales Acts, removed liability from its employees and placed it on itself. It is liable to the same extent the employee would have been absent immunity from suit. If an employee would not have had the benefit of a particular defense, a damages cap for example, neither does the United States. Medical services specialists do not enjoy the cap's protection. Thus, neither does the United States when it is sued in place of a medical services specialist.

*Id.* (citations omitted). The same reasoning applies here. To the extent the United States has been sued in the place of Dr. Holbrook, it does not enjoy the benefit of the damages cap under the NMMMA.

7

**CONCLUSION**

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Summary Judgment as to Defendant's Third Affirmative Defense **[Doc. No. 29]** is hereby **GRANTED**.  The $600,000 limitation on damages in the New Mexico Medical Malpractice Act, N.M. Stan. Ann. § 41-5-6, does not apply to the defendant United States to the extent that Dr. Jerome Holbrook's allegedly negligent acts and omissions caused Rex Freeland's injuries.

_____
MARTHA VAZQUEZ
U. S. DISTRICT JUDGE

Attorney for Plaintiffs
MOFFAT &  DICHARRY
Stephen Moffat

Attorney for Defendant
Phyllis A. Dow