

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

ROGER FREELAND, on his own behalf,
ROSELYN FREELAND, on her own behalf,
and as mother and next friend of REX FREELAND
a minor with severe brain damage,

        Plaintiffs,

vs.                               No.  99-1500 MV/WWD ACE

THE UNITED STATES OF AMERICA,

        Defendant.

## PLAINTIFFS' PROPOSED FINDINGS OF FACT

1.     On May 10, 1999 Rex Freeland was fifteen years of age.

2.     Rex Freeland was, and is, a Native American, a member of the Navajo

Tribe.

3.     At the time, Rex Freeland lived with his parents, Roger and Roselyn

Freeland and with his brother Roderic Freeland and with his sisters Roshanda

Freeland, Rodricana Freeland, Roxanda Freeland, Yolanda Freeland, and Rolanda

Freeland.

4.     Rex's half-brother, Terrance Chia, and his half-sister, Shannon Chia,

were no longer at the home.

5.     On May 10, 1999 Rex was taken to Gallup Indian Medical Center by his

mother.

1



6.     Dr. Jerome Holbrook, a dentist board certified in oral surgery, admitted Rex with a diagnosis of right facial cellulitis, resulting from bilateral submental, sublingual and right submandibular swelling.

7.     Dr. Holbrook recommended that Rex undergo an incision and drainage procedure.

8.     At the time, Dr. Holbrook was a Commander in the Commissioned Corps, Indian Health Service, United States Public Health Service, which is a division of the Department of Health and Human Services of the Government of the United States.

9.     At the time, Dr. Holbrook was assigned to the Navajo area of the Indian Health Service, and was stationed at the Gallup Indian Medical Center.

10.    Since 1987, Dr. Holbrook had been a member of the Commissioned Corps, stationed at a succession of Indian Health Service (IHS) posts, including the IHS Indian School Health Center in Many Farms, Arizona, the PHS Indian Hospital in Whiteriver, Arizona, and the PHS Indian Hospital in Tuba City, Arizona.

11.    Dr. Holbrook was Rex Freeland's admitting physician at Gallup Indian Medical Center.

12.    Dr. Holbrook undertook to provide care and treatment to Rex Freeland.

13.    Dr. Holbrook undertook to perform oral surgery commencing at approximately 2:55 p.m. on May 10.

14.    Prior to the surgery, Rex was intubated nasally with an endotracheal tube placed through his nose into his pharynx and down into his bronchial tube. During the surgery he received general anesthesia intravenously and through the endotracheal tube.

2

15.     From the beginning of the surgery until Dr. Samuel Horton assumed Rex's care after the endotracheal tube was removed in the Intensive Care Unit (ICU), Dr. Jerome Holbrook was continuously in immediate attendance upon and in the physical presence of Rex Freeland at all times.

16.     Dr. Holbrook was primarily responsible for the care and treatment of Rex Freeland at all times until Dr. Horton assumed his care, sometime after the extubation.

17.     Michael Steele is a registered nurse with specialty training as a nurse anesthetist.

18.     Nurse Steele is a Captain in the Commissioned Corps, IHS, Public Health Service, which is a division of the Department of Health and Human Services of the Government of the United States.

19.     Nurse Steele is licensed in New Mexico as a certified registered nurse anesthetist (CRNA).

20.     Under New Mexico law, a CRNA may function only under the direction of and in collaboration with a licensed physician, osteopathic physician, dentist, or podiatrist.

21.     From the end of the surgery until after the extubation, Dentist Jerome Holbrook was the only physician, osteopathic physician, dentist or podiatrist present.

22.     Nurse Steele was assigned to the Navajo Area Indian Health Service and was stationed at Gallup Indian Medical Center.

23.     Nurse Steele undertook to provide care and treatment to Rex Freeland on May 10, 1999.

3

24.    According to the hospital records, the surgical procedure was completed at 3:30 p.m., at which time Rex Freeland was breathing spontaneously and maintaining oxygen saturation, with blood pressure of 114/68, a heart rate of 150 beats per minutes, respiratory rate of 20 breaths per minute, and oxygen saturation of 99%.

25.    According to the hospital record, Rex Greeland was transported from the operating room at 3:40 p.m.

26.    The plan was to transfer Rex to the ICU for observation and for protection of his airway.

27.    Rex was transferred from the operating room to the intensive care unit by Dr. Holbrook, by Nurse Steele, and by Elizabeth Schunk, the operating room nurse.

28.    During the surgery Rex had been receiving oxygen through the endotracheal tube.

29.    According to the clock on the monitoring equipment in the Intensive Care Unit, Rex arrived in the ICU at 3:57 p.m.

30.    The ICU is less than fifty yards from the operating room.

31.    No measurements or record of Rex's vital signs or of his oxygen saturation were made between the time he left the operating room and the time he arrived in the ICU.

32.    By the time Rex arrived at the ICU, his skin was cyanotic, a bluish color indicating that his blood was not being oxygenated.

33.    Rex Freeland's heart rate, respiratory rate, and oxygen saturation should have been continuously monitored at all times from the conclusion of surgery until he arrived in the ICU.

4

34.     During the transport from the OR to the ICU, as soon as Rex Freeland showed signs of hypoventilation, of bradycardia, of cyanosis, or of decreasing oxygen saturation, appropriate intervention should have been instituted, including ventilatory assistance with an ambu bag, adjustment of the endotracheal tube, muscle paralysis, sedation, and the administration of cardiac stimulants.

35.     The transport of Rex Freeland without proper monitoring violated hospital policy 200.1, Standard II: "A patient transported to the Post-Anesthesia Care Unit... shall be continuously evaluated and monitored during transport.  Support and treatment appropriate to the patient's condition shall be provided during transport."

36.     The failure to monitor Rex Freeland's heart rate, respiratory rate, and oxygen saturation during the transport from the operating room to the ICU constitutes a breach of the standard of care for oral surgeons and for certified registered nurse anesthetists.

37.     Dr. Holbrook had the right and responsibility to monitor Rex Freeland and to be sure that he was breathing during the transport from the operating room to the ICU.  Additionally, because this was his patient, and because he was the surgeon and physician in charge, Dr. Holbrook had the right and responsibility to require that Rex Freeland be monitored and ventilated as needed during this time.

38.     Geraldine Winkler, R.N., is the nurse who was on duty in the intensive care unit, and who received Rex when he arrived.

39.     When Nurse Winkler first measured Rex's vital signs in the ICU, at approximately 3:58 p.m., she found that his oxygen saturation had dropped to 65%, that his heart rate was 35 beats per minute, and that he was not breathing.

5

40.    Within a few minutes of arrival, Dr. Holbrook and Nurse Steele decided to remove Rex's endotracheal tube.

41.    The endotracheal tube was the means or conduit through which air and oxygen could and should have been delivered to Rex's lungs.

42.    The endotracheal tube should not have been removed.  The removal of the endotracheal tube by Dr. Holbrook and Nurse Steele violates hospital policy 406, "Extubation of the Difficult Airway."

43.    Dr. Holbrook had the right and responsibility to maintain the endotracheal tube, and to refuse to remove the endotracheal tube.

44.    Dr. Holbrook had the ultimate authority to decide whether or not the endotracheal tube should be removed.

45.    Rex Freeland's endotracheal tube was removed under the direct and immediate supervision of Dr. Holbrook and with his approval.

46.    The decision to remove the endotracheal tube was made jointly by Dr. Holbrook and Nurse Steele.

47.    The removal of the endotracheal tube was a negligent and reckless act.

48.    Removal of the endotracheal tube under these circumstances constitutes a breach of the standard of care for oral surgeons and for certified registered nurse anesthetists.

49.    Immediately after the endotracheal tube was removed, Rex went into cardiorespiratory arrest, leading to a "code blue" with initiation of cardiopulmonary resuscitation (CPR).

6

50.     By 4:04 p.m. according to the clock on the monitor in the ICU, the endotracheal tube had been replaced, oxygen was being pumped into his lungs, he had received atropine and epinephrine, and his heart was beating effectively.

51.     An arterial blood gas (ABG) sample taken sometime after 4:04 p.m. (monitor time) showed that Rex's oxygen saturation was 98%, his pH was 6.87, and his $pCO_2$ was 112.  The normal pH is 7.42, and the normal $pCO_2$ is 30.

52.     A pH of 6.87 and a $pCO_2$ of 112 indicates a severe respiratory acidosis which is incompatible with life.  The high $pCO_2$ indicates that Rex had not been breathing or ventilating (or had been hypoventilating) for at least seven to twenty minutes prior to the time that the ABGs were drawn.

53.     Rex Freeland has not woken up.

54.     Rex Freeland never will wake up.

55.     Rex Freeland suffocated while under the care and supervision of Dr. Jerome Holbrook between 3:30 p.m. and 4:04 p.m.

56.     As the percentage of oxygen in his blood decreased during this time (as a result of hypoventilation) Rex's heart rate also gradually decreased, causing increasingly less oxygenated blood to reach his brain.

57.     Ultimately, Rex's Freeland's brain was receiving no oxygenated blood at all, and the cellular environment became increasingly acidotic, until the ventilation and circulation were finally restored by approximately 4:04 p.m. (monitor time).

58.     During the entirety of the time from the initiation of surgery through 4:04 p.m. (and beyond) Rex Freeland was entirely under the influence of anesthetic

7

medications, making him completely and absolutely dependant on Dr. Holbrook and Nurse Steele for his health and safety.

59.     Dr. Holbrook, as the treating physician who admitted Rex to the hospital, who performed the surgery, and who transported Rex to the intensive care unit, is primarily responsible for any and all injuries and damages which occurred.

60.     The decision to remove the endotracheal tube was made jointly by Dr. Holbrook and by Nurse Steele.

61.     Dr. Holbrook was negligent in his care and treatment of Rex Freeland.

62.     Nurse Steele was negligent in his care and treatment of Rex Freeland.

63.     As a direct and proximate result of the negligence of Dr. Jerome Holbrook and Nurse Michael Steele, Rex Freeland was suffocated, causing hypoxic ischemic encephalopathy.

64.     Rex Freeland is, and will for the rest of his life remain, in a persistent vegetative state.

65.     Rex Freeland had no brain damage prior to the surgery.

66.     Rex Freeland will never be able to obtain any form of gainful employment.

67.     Rex Freeland will never be able to care for himself.

68.     Rex Freeland will require licensed nursing care twenty-four hours per day for the rest of his life.

69.     The cost of obtaining appropriate care for Rex Freeland in Albuquerque, New Mexico is $282,393.00 per year. In Phoenix, Arizona the cost of obtaining such care is considerably greater. This cost will increase at approximately 3-4% per year after discounting for present value.

70.     Over Rex Freeland's life expectancy, the cost of his care, reduced to

8

present value, will total at least $12,300,866.00, depending on the community in which he is living.

71.   The cost of purchasing a home in which Rex could be cared for appropriately by his family and by licensed care givers, is approximately $180,000.00, including the necessary modifications.

72.   The value of Rex Freeland's lost earning capacity is $865,945.00.

73.   The value of the household services which have been lost is $240,295.00.

74.   The value of the conscious pain and suffering experienced by Rex Freeland while he was being suffocated is $1,000,000.00.

75.   The value of the loss of enjoyment of life suffered by Rex Freeland is $3,000,000.00.

76.   The cost of providing medical and medical related care to Rex Freeland from the time of injury until the time of trial has been greater than $400,000.00.

77.   The value of the loss of consortium suffered by Roselyn Freeland is $1,000,000.00.

78.   The value of the loss of consortium suffered by Roger Freeland is $1,000,000.00.

79.   Each of Rex Freeland's siblings - Rodricana Freeland, Roderick Freeland, Roshanda Freeland, Roxanda Freeland, Yolanda Freeland, Rolanda Freeland, Terrance Chia, and Shannon Chia - have suffered loss of consortium valued at $100,000.00.

80.   If Rex Freeland receives appropriate medical, nursing, and related care at home, he should have a life expectancy to age seventy-three.

81.     Administrative Claim Forms (Form 95) were mailed on behalf of Rex

Freeland, Roger Freeland, and of Roselyn Freeland on June 18, 1999.

82.     By operation of law these claims were denied six months later.

83.     On December 28, 1999 this lawsuit was filed in the United States District

Court for the District of New Mexico.

MOFFAT & DICHARRY
Attorneys for Plaintiffs
1005 Luna Circle NW
Albuquerque, NM 87102
(505) 242-2774

STEPHEN MOFFAT

We hereby certify that a true and accurate
copy of the foregoing pleading was mailed
to opposing counsel this ____ day of
April, 2001.

STEPHEN MOFFAT

10